USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/25/2021___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------- X

Echo Bay Pharmaceuticals, LLC,                           1:20-CV-06345-BCM

      Plaintiff,

                                   **STIPULATED ELECTRONIC**
-v-                                                                           **DISCOVERY ORDER**

Torrent Pharma, Inc.,

      Defendant.

-------------------------------------------------------------------------------- X

      Echo Bay Pharmaceuticals, LLC ("Echo Bay") and Torrent Pharma, Inc. ("Torrent")

(collectively, the "Parties") respectfully request that the following Stipulated Electronic

Discovery Order (the "Protocol") be entered by the Court in the above-referenced case (the

"Litigation"). In an effort to control costs and reduce the volume of electronically stored

information ("ESI") that is not relevant to the matter, the parties hereby stipulate and agree to the

following:

## GENERAL MATTERS

      1.     The Parties shall take reasonable steps to comply with the Protocol set forth

herein.

      2.     To the extent reasonably possible, the production of documents shall be

conducted to maximize efficient and quick access to Documents and minimize related discovery

costs. The terms of this Protocol should be construed so as to ensure the prompt, efficient, and

cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the

Local Rules, and any Orders by this Court.

3.      Except as specifically limited herein, this Protocol governs the production of discoverable documents by the Parties during the Litigation.

4.      This Protocol shall not enlarge, reduce, or otherwise affect the proper scope of discovery in this Litigation, nor imply that discovery produced under the terms of this Protocol is properly discoverable, relevant, or admissible in this or in any other litigation.  Additionally, this Protocol does not enlarge, reduce, or otherwise affect the preservation obligations of the Parties.

5.      Subject to the Parties' objections and responses to requests for production of documents and subject to the Parties' Stipulated Protective Order, all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Protocol shall be deemed to limit or modify in any way the terms of a protective order that has been or may be entered in this Litigation.  Nothing in this Protocol shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable.  Additionally, nothing in this Protocol shall be deemed to waive or limit either Party's right to object to the production of certain electronically stored information, pursuant to Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure, on the ground that the sources are not reasonably accessible because of undue burden or cost.

6.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Protocol.  To the extent compliance with this Protocol imposes an undue burden with respect to any protocol, source, or search term, the Parties shall promptly confer in an effort to resolve the issue.  If the Parties are unable to resolve

the issue by mutual agreement after such conference, the Party seeking relief may move the

Court for relief for good cause shown.

7.      Consistent with their obligations under applicable Federal Rules of Civil

Procedure and this Court's orders, the Parties will attempt to resolve disputes regarding the

issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the

Parties are unable to resolve the dispute after a good faith effort, the Parties may apply to the

Court for relief.

<u>**DEFINITIONS**</u>

8.      "**Electronically stored information**" or "**ESI**" shall include all electronic files,

documents, data and information covered under the Federal Rules of Civil Procedure.

9.      "**Bates Number**" means a unique number affixed to each page of a document

produced in the Litigation.

10.     "**Document**" shall include both Hard Copy Documents and Electronic

Documents as defined herein.

11.     "**Database**" means a collection of related Electronic Data organized (often in

rows, columns and tables) in an electronic environment for a particular purpose.  Databases often

perform various functions, including data analysis, data sorting and report generation.  Microsoft

Access and Oracle are common database platforms.

12.     "**Electronic Document**" means Documents existing in electronic form at the time

of collection, including but not limited to:  email, word processing files (e.g., Microsoft Word),

computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g.,

.PDF).

13.     "**Hard Copy Document**" means Documents existing in paper form at the time of

collection.

14.     **"Metadata"** means corresponding data about and Electronic Document that resides in the un-viewed area of an Electronic Document and is generally not seen when such a Document is printed (e.g., date created, date sent, author).

15.     **"Native Format"** means the format in which an Electronic Document was created and used (also referred to in terms of "Native Production").

16.     **"Party"** refers to any one of the plaintiff or defendants in this Litigation. **"Parties"** refers to one or more Party.

17.     **"Producing Party"** shall refer to the party producing documents and ESI in response to a discovery request propounded by another party.

18.     **"Receiving Party"** shall refer to the party receiving documents and ESI in response to a discovery request propounded by the Receiving Party.

19.     **"Custodians"** shall be initially limited to seven (7) individuals per party. Custodians for each party may be individuals identified in that party's (i) Rule 26(a)(1) Initial Disclosures, (ii) answers to Interrogatories, (iii) Documents, (iv) pleadings, or any other individual later learned or reasonably believed to have relevant discoverable information for such party. Custodians shall be selected by the opposing party as a Custodian by stating so in a writing to the other party making such identification. Each party shall identify Custodians as soon as reasonably possible. Should any party believe that production of documents from additional custodians is necessary, the Parties will meet and confer to attempt to appropriately limit such additional productions and resolve such requests in good faith. If the Parties are unable to resolve any dispute after a good faith effort, the Requesting Party may apply to the Court for relief.

## **GENERAL SEARCH GUIDELINES**

20.     The Parties agree to search the ESI of each Custodian designated by the other party.  Each Custodian's ESI shall include: active and archived e-mail accounts, active and archived chatting/instant messaging/videoconferencing programs, shared network drives and cloud storage facilities on which the Custodian places or maintains responsive documents, and work station or laptop hard drives not connected to any shared network for documents.  Each Custodian's ESI shall not include network locations or databases to which the Custodian has access but does not routinely utilize or that a Party believes in good faith after a thorough investigation are not likely to contain responsive information.

21.     The Parties recognize that certain individuals, if designated as a Custodian by Echo Bay, may have used email accounts on the "bio-pharminc.com" email domain.  Torrent will search email sent or received using the "bio-pharminc.com" domain if that email was migrated into an available "torrentpharma.us" account.  Torrent has identified two "torrentpharma.us" email accounts that contain "bio-pharminc.com" email data that will be searched in accordance with the other parameters of this protocol that will not be counted against the document custodian limit identified above.

22.     Custodian ESI does not include cellular/mobile text messages or landline/mobile voicemail messages.  However, should discovery suggest to either Party that particular Custodians' text messages or voicemail messages contain responsive information for which the burden of collecting is proportional to the needs of the case, the Parties will meet and confer regarding collection and production of text messages or voicemails from specific Custodians.

23.     Backup tapes and other sources of relevant ESI that are not reasonably accessible may fall within the scope of discovery.  The Parties agree, however, that except as otherwise stated herein, production of ESI from such sources shall be required only if the Requesting Party

demonstrates a need and relevance that outweigh the costs and burdens of retrieving and processing the ESI.  The Parties will negotiate in good faith with regard to who should bear the costs for the search of sources that are not reasonably accessible.  Should the Parties not reach agreement after negotiations in good faith on whether the Requesting Party's need outweighs the costs and burdens and/or who should bear the cost, the Parties will seek assistance from the Court to resolve the issue.

24.     The Parties will negotiate in good faith with regard to a mutually agreeable list of search terms to be used to collect relevant documents for review by each Party, as well as the relevant date range for such searches.  Should the Parties not reach agreement on a mutually agreeable list of terms or date range(s), the Parties will seek assistance from the Court to resolve the issue.

25.     Once the Parties have agreed on search terms, each Party will review the documents within each Custodian's ESI for responsiveness to the other Party's discovery requests.  Any Party may use technology assisted review ("TAR") in connection with its review and production of documents.  If a party uses TAR, it shall disclose the TAR software used, the TAR methodology used, the criteria used to identify the universe of documents to which TAR was applied (including any pre-culling of documents, search terms, domain filtering, file-type exclusions, minimum text requirements, etc.), the methodology of the training process, the targeted level of recall (*e.g.*, 70%) (if any), the methodology and results of the validation testing used, and how documents containing little or no text (*e.g.*, media files, images, un-OCR'ed PDFs, encrypted files) were handled.

26.     Each Party shall bear their own costs for the production of ESI and Hard Copy Documents.  In the event, however, that a Requesting Party requests additional searches or the

production of cumulative or repetitive information or information that otherwise imposes an undue burden or expense, the Producing Party may object.  Upon objection, the Parties shall work in good faith to resolve the issue.  In the event that the Parties are unable to resolve their differences, the Producing Party may move the Court for an Order shifting the cost of production to of additional searches or the production of cumulative or repetitive information that otherwise imposes an undue burden or expense to the Requesting Party.

27.     No Party has an obligation to conduct electronic searches for documents beyond those described in the preceding paragraphs, but a Party may choose to do so.  A Party that becomes aware of specific responsive documents not located through the searches described in the preceding paragraphs must produce those documents (or log them, if privileged).

28.     By **February 28, 2021**, the Parties shall identify the source or sources of potentially discoverable information that each party asserts is inaccessible to the extent that such determination can be made.  For all such potentially discoverable information, the Parties will indicate whether the data is catalogued, such that the parties can determine more precisely what type of potentially discoverable information might exist, and whether the potentially discoverable information can be selectively searched.  (For Custodians identified after January 31, 2021, the Producing Party shall make the disclosure herein within 30 days of a Custodian being identified.)

29.     By **February 28, 2021**, the Parties shall identify, to the extent that they are aware, responsive or potentially responsive data that is no longer available in any form, indicating (if known) why the data is no longer available, when it became unavailable, whether there was a directive to delete or destroy such data and, if so, who issued the directive.  (For Custodians

identified after January 31, 2021, the Producing Party shall make the disclosure herein within 30 days of a Custodian being identified.)

## FORMAT OF DOCUMENTS PRODUCED

30.     **Hard Copy Documents.**  Hard Copy Documents shall be scanned with OCR, and shall be produced as black and white, Group IV compression, single-page TIFF images, at not less than 300 dpi resolution with the document boundaries (BEGATT, ENDATT, as referenced in Rider A) contained in a separate file.  Reasonable efforts shall be made to scan the pages at or near their original size and so that the image appears straight and not skewed.  Physically oversized originals, however, may appear reduced.  In addition, reducing image size may be necessary to display Bates Numbers and Confidentiality Designations without obscuring text.

31.     In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper Documents should be logically unitized).  In the case of an organized compilation of separate Documents—for example, a binder containing several separate Documents behind numbered tabs—the Document behind each tab should be scanned separately, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending Document and attachment fields.  The parties shall use their best efforts to unitize the Documents correctly.

32.     **Electronic Documents.**  With the exception of documents identified below, Electronic Documents shall be produced as black and white, Group IV compression, single-page TIFF images, with not less than 300 dpi resolution and associated to the Production ID.  All images related to the same document should be contained in the same folder, with a maximum of 1,000 documents per folder.  The images shall be accompanied by a load file, e.g., .opt or .dii.  In addition, Electronic Documents shall be produced with corresponding Metadata, as described in

Rider B, in a separate data file.  The Producing Party will take reasonable steps to produce relevant, non-privileged attachments to Electronic Documents contemporaneously and in sequential order.  Thus, the Producing Party will take reasonable steps to ensure that all electronic documents attached to an email are to be produced contemporaneously and sequentially immediately after the parent email.

33.    **Excel™ Spreadsheets:** The Parties agree to produce Excel™ spreadsheets in the Native Format, with the exception that any Excel™ spreadsheet that requires redaction may be produced in TIFF-format only; a Party may also redact spreadsheets in Native Format by replacing privileged text with the designation "[**REDACTED**]" provided that doing so does not alter any other data in the spreadsheet, e.g., by altering formulas.  Any Excel™ spreadsheet that is produced in Native Format must have a corresponding placeholder TIFF image indicating its place in the production, its relationship to other documents in the production, and any other corresponding Metadata.

34.    To the extent that printouts or images of all or part of an Excel™ spreadsheet were also maintained in static form (e.g., as a PDF or a hard copy in a file), those documents will be produced as static images consistent with the specifications for Hard Copy Documents or Electronic Documents, whichever applies.

35.    **PowerPoint Slides.** The Parties agree to produce Microsoft PowerPoint slides as TIFF images, rather than in Native Format, provided that any comments or speaker's notes in the Microsoft PowerPoint slides are produced as part of the "text only" Metadata for the document, or otherwise visible in the TIFF image due to the print format of the Microsoft PowerPoint slide itself.  To the extent that any Microsoft PowerPoint slides contain animations and/or transitions that would not be visible in a static TIFF image, the Receiving Party may request these files in

Native Format after identifying an objective reason as to why Native Format production is necessary.

36. **Miscellaneous Electronic Files.**  To the extent that an Electronic File otherwise cannot be reduced to TIFF images, e.g., audio or video files, the file shall be produced in Native Format with a corresponding placeholder TIFF image.

37. **Databases.**  Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  These files are typically very large and would, if rendered to TIFF images completely, produce thousands of pages that would have little utility to a reviewer without the associated database.  If the Producing Party believes responsive information is located on a such a database, it shall promptly meet and confer with the Receiving Party regarding a mutually-agreeable means of producing the responsive information without undue burden.

38. **Searchable Text.**  The Parties agree that they will produce extracted text for correspondingly produced Electronic Documents.  All text files contained in the FULLTEXT field in Rider B must be provided at the document level, provided in the same folder with corresponding images, and named to correspond to the Production ID.  For redacted documents or documents without extractable text, OCR Text will be provided for the non-redacted text.  All TIFF, PDF, or image-based file types in which text could not be extracted normally through standard ESI processing must be OCR processed prior to each party running search terms.

39. With respect to Hard Copy Documents, the Parties agree to produce OCR Text for Hard-Copy Documents.

40.     **Metadata.**  For Electronic Documents, the Parties agree to produce the Metadata set forth in Rider A in a .DAT file to the extent such Metadata is available, responsive, not privileged, and are already populated in the Party's normal course.

**OTHER ISSUES RELATING TO PRODUCTION**

41.     The Parties will make reasonable efforts to de-duplicate Electronic Documents globally prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved.  The Parties may also use industry standard message threading technology to remove email messages where the content of those messages, and any attachments, are wholly contained within a later email message.

42.     Documents may be produced on physical media or by secure electronic transmission, e.g., via FTA.  Productions shall be encrypted.  Each Document produced in Native Format will be named by its Bates Number, e.g., ABC0001.xls.  Each produced TIFF image or hard copy page will be labeled with a Bates Number.

**ISSUES RELATED TO PRIVILEGE AND REDACTION**

43.     Each party will review its documents, including ESI, for privileged information prior to production.  Responsive documents withheld, or produced documents that have been redacted, on the grounds of any privilege or immunity will be identified in a privilege log.  For each withheld or redacted document, the privilege log shall include, as applicable, the date of the document, document type or file extension (e.g., memorandum, email, .docx, etc.), the name of its author or creator, the name(s) of its recipient(s), and the stated privilege or privileges for each document withheld (generally, attorney-client privilege or work product privilege).  Attachments to privileged emails must appear as separate entries on the log, if privileged, or produced, if not privileged and responsive.  Attorney authors and/or recipients of privileged information shall be identified as such on the privilege log, or in an accompanying addendum.  So long as one copy of

11

a document is identified on a privilege log, identical duplicates of that document need not be produced or logged.  A party's privilege log may provide the forgoing information based on metadata only.  Email threading may be applied to reduce the number of log entries required.  However, in that case, any individuals who do not appear in the top email must be added to the log entry.  The receiving party may request—for a reasonable and proportionate number of log entries that together amount to no more than 10% of the logged population—that the withholding party provide a narrative description of the contents of the privileged communication sufficient that explains the basis for the assertion of the privilege without revealing the substance of the communication.  Notwithstanding the foregoing, communications between employees of parties and their counsel of record in this litigation dated on or after the date the Complaint was filed do not need to be logged.

## APPLICATION OF THE FEDERAL RULES OF CIVIL PROCEDURE

44.     This agreement is not intended to function in lieu of Federal Rule 34 or any other applicable Federal Rule of Civil Procedure or Local Civil.  The agreements set forth herein are without prejudice to the right of a Requesting Party to request additional searches or additional information about specific ESI if it can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts.  The Parties will negotiate in good faith with regard to whether such additional efforts are reasonably required, and will jointly seek assistance from the Court to resolve such disputes if an agreement cannot be reached.

## ESI/DISCOVERY VENDOR LIMITATIONS

45.     Given that the purpose of this Order is to maximize efficient and quick access to Documents and minimize related discovery costs, to the extent that either Party using a third-party or in-house ESI/Discovery provider or vendor ("Vendor") to assist with Electronic

Discovery later learns that such Vendor's system or platform is unable to strictly perform some aspect of this Order (or is unable to do so without significant additional expense being incurred), such Party will report such inability to the other Party in writing, after which the Parties shall promptly confer in an effort to resolve the issue.  If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief for good cause shown.

**SO STIPULATED.**

For Plaintiff Echo Bay Pharmaceuticals, LLC:

Dated:  January 22, 2021

By *s/ Vladimir I. Arezina*
Vladimir I. Arezina, Esq.
*Admitted Pro Hac Vice*
**VIA Legal, LLC**
1237 W. Madison St.
Chicago, IL  60607
Telephone:  (312) 574-3050
Email:  vladimir@arezina.com

Alexander I. Arezina, Esq.
*Admitted Pro Hac Vice*
The Oakbrook Terrace Atrium
17W220 22nd Street, Suite 410
Oakbrook Terrace, IL  60181
Telephone:  (312) 437-1982
Email:  alex@arezinalaw.com

John R. Ostojic, Esq.
*Admitted Pro Hac Vice*
Ostojic & Scudder, LLC
19 N. Green Street
Chicago, IL 60607
Telephone:  (312) 404-3748
Email:  john@ostojiclaw.com

For Defendant Torrent Pharma, Inc.:

Dated:  January 22, 2021

**DORSEY & WHITNEY LLP**

By  *s/ Ben D. Kappelman*
    Rabea Jamal Zayed *(admitted pro hac vice)*
    Ben D. Kappelman
    Donna Reuter *(admitted pro hac vice)*
zayed.rj@dorsey.com
kappelman.ben@dorsey.com
reuter.donna@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota 55402
(612) 340-2600

**SO ORDERED**

**BARBARA MOSES**
**United States Magistrate Judge**

Dated: January 25, 2021

## RIDER A

**FIELDS AND METADATA TO BE PRODUCED**

| Field | Data Type | Paper | Loose Native Files & Attachments | Email |
|-------|-----------|-------|----------------------------------|-------|
| BegDoc | TEXT | Start Bates | Start Bates | Start Bates |
| EndDoc | TEXT | End Bates | End Bates | End Bates |
| BegAttach | TEXT | Starting bates number of document family | Starting bates number of document family | Starting bates number of document family |
| EndAttach | TEXT | Ending bates number of document family | Ending bates number of document family | Ending bates number of document family |
| Custodian | TEXT – single entry | Custodian of the document | Custodian of the document | Custodian of the document |
| All_Custodians | TEXT – separate entries with ";" | | All custodians of the document even if de-duplicated prior to production | All custodians of the document even if de-duplicated prior to production |
| File Path | TEXT | | File path where original file was collected from | Folder where email was collected from. Includes folder locations within email container files such as PST and NSF |
| From | TEXT | | | Sender of message |
| To | TEXT – separate entries with ";" | | | Recipients of message |
| CC | TEXT – separate entries with ";" | | | Copied recipients |
| BCC | TEXT – separate entries with ";" | | | Blind copied recipients |
| Subject | TEXT or MEMO if over 255 characters | | | Subject of message |
| DateSent | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | | Date message sent |

| Field | Data Type | Paper | Loose Native Files & Attachments | Email |
|---|---|---|---|---|
| TimeSent | TEXT (hh:mm:ss) | | | Time message sent |
| DateReceived | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | | Date message received |
| TimeRecv | TEXT (hh:mm:ss) | | | Time message received |
| FileName | TEXT (hh:mm:ss) | | Name of original file | Name of original file |
| FileExtension | Text | | Extension of original file | Extension of original file |
| File Size | Number | | File size in bytes | |
| DateCreated | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | Date file was created | |
| DateModified | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | Date file was last modified | |
| Title | TEXT or MEMO if over 255 characters | | Title from document metadata | |
| Author | TEXT | | Document author from metadata | |
| Company | TEXT | | Document company or organization from metadata | |
| Hash | TEXT | | MD5 Hash Value | MD5 Hash Value |
| Text Files | TXT files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt) | Txt files should be named the same as the beg doc and delivered in the same folder as the images (e.g., ABC0000001.txt) | | |
| Native Files | Should be named the same as the beg doc and delivered in the same folder as the | | | |

| Field | Data Type | Paper | Loose Native Files & Attachments | Email |
|---|---|---|---|---|
| | images (e.g., ABC0000001.xls) | | | |
| Confidentiality | Text | Confidential Status of document | Confidential Status of document | Confidential Status of document |

**RIDER B**

**METADATA FIELDS FOR PRODUCTION**

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 1 | BEGDOC | The beginning bates number of this document | ABC00000001 |
| 2 | ENDDOC | The last bates number of this document | ABC00000010 |
| 4 | BEGATTACH | The beginning bates number of the document family | ABC00000001 |
| 5 | ENDATTACH | The last bates number of the entire document family | ABC00000027 |
| 6 | CUSTODIAN | Custodian to which the data is associated with. | John Doe |
| 7 | ALL CUSTODIAN | Other custodians to whom the document is associated | Mary Smith; Michael Jones |
| 8 | RECORDTYPE | Type of electronic record: | Email, Attachments, eDoc |
| 9 | FROM | Author of the e-mail message | Mary.Smith@hotmail.com |
| 10 | TO | Main recipient(s) of the e-mail message, by email address. | JohnDoe@gmail.com |
| 11 | CC | Recipient(s) of "Carbon Copies of the e-mail message. | Michael123@yahoo.com |
| 12 | BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. | helpdesk@omnivere.com |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 13 | SUBJECT | Subject of the e-mail message. | Fw: Urgent |
| 14 | DATESENT | Date when the email was sent. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 15 | TIMESENT | Time when the email was sent. The time is formatted in US format: hh:mm:ss | 11:20:30 |
| 16 | FILEEXT | File extension of native file. | .msg, .pst, .xls |
| 17 | AUTHOR | Author field from metadata of a native file. | Msmith |
| 18 | DATECREATED | Date when the file was created. The date is formatted in US format: mm/dd/yyyy | 02/24/2007 |
| 19 | DATEMODIFIED | Date when the file was last modified | 03/03/2019 |
| 20 | DATERECEIVED | Date message received | 02/24/2007 |
| 21 | TIMERECEV | Time message received | 11:20:33 |
| 22 | CONFIDENTIALITY | Confidentiality designation | Confidential; Attorney's Eyes Only |
| 23 | TITLE | Title from document metadata | Board_Presentation_Q2 |
| 24 | AUTHOR | Document author from metadata | Barb Wire |

| Field Order | Field Name | Description | Example |
|---|---|---|---|
| 25 | COMPANY | Document company or organization from metadata | Client |
| 26 | FILESIZE | Size of native file, in bytes | 2546683 |
| 27 | PAGECOUNT | Number of pages | 3 |
| 28 | FILENAME | Original filename of native file. Contains subject of e-mail message for e-mail records. | Real estate holdings.xlsx |
| 29 | MD5HASH | Unique identifier, similar to a fingerprint, extracted from all files. | D564668821C342 00FF3E32C9BFD CCC80 |
| 30 | TEXTPATH | Path to the extracted text for the document, for mapping | Text\EFXAA0000 0001.txt |
| 31 | NATIVELINK | Path to the produced native file version (if applicable), for mapping | Natives\001\ABC 00001.xls |